RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0456p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

IROQUOIS ON THE BEACH, INC., a Michigan Corporation,
          *Plaintiff-Appellant/Cross-Appellee,*

          *v.*

GENERAL STAR INDEMNITY COMPANY,
          *Defendant-Appellee/Cross-Appellant.*

Nos. 07-2458/2495

Appeal from the United States District Court

for the Western District of Michigan at Marquette.

No. 06-00233—Robert Holmes Bell, District Judge.

Argued:  October 22, 2008

Decided and Filed:  December 23, 2008

Before:  MOORE, GRIFFIN, and BRIGHT, Circuit Judges.[*]

_____

## COUNSEL

**ARGUED:**  Raymond W. Morganti, SIEMION, HUCKABAY, BODARY, PADILLA, MORGANTI & BOWERMAN, Southfield, Michigan, for Appellant.  Matthew J. Thomas, RUTLEDGE, MANION, RABAUT, TERRY & THOMAS, Detroit, Michigan, for Appellee.  **ON BRIEF:**  Raymond W. Morganti, SIEMION, HUCKABAY, BODARY, PADILLA, MORGANTI & BOWERMAN, Southfield, Michigan, for Appellant. Matthew J. Thomas, Alvin A. Rutledge, RUTLEDGE, MANION, RABAUT, TERRY & THOMAS, Detroit, Michigan, for Appellee.

_____

[*]The Honorable Myron H.  Bright, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

---

**OPINION**

---

MYRON H. BRIGHT, Circuit Judge. Appellant Iroquois on the Beach, Inc. ("Iroquois"), a seasonal hotel insured under an "all risk" policy, appeals from the district court's[1] grant of summary judgment dismissing its claims against General Star Indemnity Company ("General Star") for water and wind damage losses sustained to its building. The district court determined that exclusion B.2.f. of the insurance policy applied to preclude insurance coverage. The record without dispute established that continuous or repeated seepage or leakage of water over a period of at least fourteen days caused the damages to the insured hotel and that this cause came within the above exclusion. We affirm.

## I. BACKGROUND

Iroquois, a seasonal hotel on Mackinac Island, Michigan, operates from approximately May 15 to October 15 of each year. It stands three stories tall and offers forty-six guest rooms, a restaurant with an "old dining room" and a "new dining room," and a bar. The original building dates back to 1903. The last addition occurred in 1979 or 1980 ("1979/1980 addition"), which added two towers, the new dining room, and several guest rooms.

General Star Indemnity Company has provided commercial property insurance to Iroquois since June 1, 2002. On September 6, 2005, General Star issued Policy No. IAG389285B, an "all risk" policy effective from September 1, 2005 to September 1, 2006. The Policy provides coverage for the Hotel Iroquois and several other structures. Its terms and exclusions frame the issues for this dispute.

---

[1]The Honorable Robert Holmes Bell, United States District Court for the Western District of Michigan, Northern Division.

In July or early August of 2005, Iroquois's owner, Margaret Davey McIntire, met with Rick Marshall, a construction contractor who often did work for the hotel. McIntire told Marshall that the back of the building would not hold paint and the windows in that part of the building did not open and close properly. In response, Marshall encouraged McIntire to contact architect Mark Buday. Buday scheduled an inspection of the building on October 26, 2005 to allow the tourist season to end.

When Buday arrived with structural engineer Ryan Johnston to inspect the hotel, sections of the siding were removed from the 1979/1980 addition to facilitate the inspection. Shortly after the inspection, Marshall became concerned about a potential collapse and shored up parts of the building. On November 11, 2005, Johnston released a report based on the October 26 inspection and subsequent visits, in which he identified decay in several areas of the 1979/1980 addition. McIntire indicated surprise at learning of the decay.

In a November 12, 2005 letter to Iroquois's owner, Buday explained that water was entering the building envelope because of the insufficient steel frame that failed to protect the building in windy conditions, the inappropriateness of the existing cladding system for the site's extreme climatic conditions, and the too high or sloped existing grade around the building. He suggested that the damage occurred gradually over the course of several years. He recommended installing a steel frame, adding a rain screen cladding system, and adjusting the grade.

To date, the cost of repairs to the Iroquois have totaled about $1.5 or $1.6 million, excluding the costs of upcoming repairs to another tower.

On December 1, 2005, General Star received Iroquois's notice of a loss dated November 17, 2005. Iroquois then forwarded to General Star an April 17, 2006 coverage letter drafted by Iroquois's attorney, setting forward the legal basis for the insurance claim. On May 8, 2006, General Star sent a letter denying coverage for the loss at issue.

On July 17, 2006, Iroquois sued General Star in the Circuit Court for the County of Mackinac.  General Star removed the case to federal court on August 31, 2006.

The district court noted that General Star did not dispute that Iroquois's loss to its building falls within the insurance policy, leaving the remaining issue of whether the loss came within one or more of the policy exclusions.  The district court ultimately granted General Star's motion for summary judgment, ruling that exclusion B.2.f.[2] precluded insurance coverage.  The district court also determined that genuine issues of material fact existed relating to the four other policy exclusions.[3]  Iroquois timely appealed, asserting that the B.2.f. exclusion did not as a matter of law bar coverage.

## II.   ANALYSIS

This court reviews a district court's grant or denial of summary judgment de novo.  *Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1408 (6th Cir. 1996).

Although the insurer asserted five exclusions as a basis to deny the insured's recovery under the policy, we focus on exclusion B.2.f., which is dispositive and on which the district court relied to preclude insurance coverage.  The district court ruled that the undisputed facts present in this case triggered this exclusion.  The court granted summary judgment of dismissal for General Star after determining that the exclusion applied.

---

[2] This exclusion precluded coverage for losses caused by the continuous or repeated seepage or leakage of water over a period of fourteen days or more.

[3] In addition to exclusion B.2.f., the four other exclusions asserted by General Star include: 1) Exclusion B.1.h., which precludes insurance coverage for losses caused by fungus, wet rot, dry rot, and bacteria; 2) Exclusion B.2.d.(2), which precludes insurance coverage for losses caused by rust or other corrosion, decay, deterioration, hidden or latent defect, or any quality in property that causes it to damage or destroy itself; 3) Exclusion B.3.a., which precludes insurance coverage for losses caused by weather conditions; and 4) Exclusion B.3.c(2) and (3), which precludes insurance coverage for faulty, inadequate, or defective design or maintenance.

Section B.2.f provides:

B.  Exclusions
    2.  We will not pay for loss or damage caused by or resulting from
        any of the following:
    . . .
        f.  Continuous or repeated seepage or leakage of water, or the
            presence or condensation of humidity, moisture or vapor, that
            occurs over a period of 14 days or more.

Iroquois argues that exclusion B.2.f. is inapplicable because windstorms, a covered loss under the policy, initiated the sequence of events that resulted in the loss and B.2.f. contains no "anti-concurrent, anti-sequential" clause as in paragraph of B.1. Such a clause excludes coverage "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Iroquois argues that the omission of this clause in B.2.f. indicates that the insurer intended to provide coverage where the loss is caused by wind if it was the first or last step leading to the seepage or leakage of water. Iroquois cites case law from New Jersey in support of recovery when the insured risk was the last step in the chain of causation set in motion by an uninsured peril. *See Simonetti v. Selective Ins. Co.*, 859 A.2d 694, 690-700 (N.J. Super. Ct. App. Div. 2004).

In considering Iroquois's argument, we observe that many jurisdictions have adopted the doctrine of "efficient proximate cause," or what Michigan courts call the theory of "dual or concurrent causation." This theory applies when "two or more identifiable causes, at least one of which is covered under the policy and at least one of which is excluded thereunder, contribute to a single loss." 7 STEVEN PLITT ET AL., COUCH ON INSURANCE § 101:45 (3d ed. 2008). Under this doctrine, "[i]f the cause which is determined to have set the chain of events in motion, the efficient proximate cause, is covered under the terms of the policy, the loss will likewise be covered." *Id.* Jurisdictions that have adopted this doctrine generally allow parties to contract out of its application by adopting an anti-concurrent, anti-sequential clause. *Id.*

Here, Iroquois essentially argues that we should apply the efficient-proximate-cause doctrine because there are two causes, one of which is excluded (seepage of water)

and one of which is covered (windstorms), and the covered cause (windstorms) set in motion the chain of events leading to the loss. However, the Supreme Court of Michigan has expressly declined to adopt this doctrine, explaining that it found no reason "to introduce a legal theory or doctrine that departs from the literal interpretation of an unambiguous insurance contract." *See Vanguard Ins. Co. v. Clarke*, 475 N.W.2d 48, 53 (Mich. 1991), *overruled in part on other grounds by Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 785-87 (Mich. 2003). Thus, the default rule under Michigan law is that a loss is *not* covered when it is concurrently caused by the combination of a covered cause and an excluded cause.[4] Accordingly, the exclusion for seepage or leakage of water for at least fourteen days is dispositive in this case.

Additional case law supports the view that Michigan does not permit courts to stray from the policy language in this manner. "[C]ourts must . . . give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003). Moreover, "the language of the parties' contract is the best way to determine what the parties intended." *Id.* at 457.

Finally, Iroquois's argument relating to the lack of an anti-concurrent, anti-sequential clause is irrelevant in the instant case. If Michigan followed the efficient-proximate-cause doctrine, then the adoption of an anti-concurrent, anti-sequential clause would allow the parties to contract out of the application of that doctrine. But since Michigan does not follow the doctrine, the addition of such a clause here would be surplusage. Consequently, the absence of an anti-concurrent, anti-sequential clause here does nothing to alter Michigan's default rule that a loss is not covered when it is caused by a combination of a covered risk and an excluded risk. The record clearly shows that the seepage or leakage of water occurred for at least fourteen days, thus triggering the exclusion to prevent insurance coverage.

---

[4]This default rule could presumably be altered by the inclusion of an express concurrent-causation provision. *See Hayley v. Allstate Ins. Co.*, 686 N.W.2d 273, 277-78 (Mich. Ct. App. 2004) (Cooper, J., dissenting).

### III.    CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment dismissing the action for insurance coverage by Iroquois.